# Willey *et al. versus* Day *et al.*

1. A father, owner of an entire tract of unimproved land, said to his son, who had been working with him and was about leaving him, that he would give him (the son) one-half of it, without designating which, if he would stay with him a year; the promise, in about the same terms, was afterwards repeated, designating the north half. Although the son assented and remained with his father, and some marks were made to indicate the line, and some improvements were made, it was *held* that the contract, if made, was executory merely and not an immediate transfer of ownership.

2. *Held*, that there was no evidence to a jury sufficient to find a parol contract of a sale executed.

3. The father afterwards conveyed the land to the son by deed; but before the conveyance, a judgment was entered against the father, under which the whole tract was sold. *Held*, that the contract was not executed until the delivery of the deed, and the possession and other acts of ownership of the son after that time are to be accounted for by the deed and cannot be called in aid of the parol contract, and the entire tract passed by the sheriff's sale.

4. When a vendee under an alleged parol contract has been in possession for a long time, he is not to be held to proof so rigid as under a recent sale.

5. Lapse of time will supply the want of distinctness and directness of proof, and will corroborate defective evidence of the existence of the contract, but will not create such evidence. But when the alleged vendee has been a long time out of possession, the presumptions are the other way.

ERROR to the Common Pleas of *Crawford county*.

In the court below, this was an action of ejectment, brought March 1st 1861, for the north half of lot 1186, in Sixth Donation District, commenced by Horace Day, but he dying, the defendants in error, his children and heirs at law, were substituted.

Charles Day, the father of Horace, owned the whole of lot 1186, and he and his son lived together in New York up to the

[Willey *et al. v.* Day *et al.*]

year 1825, in which Horace attained his majority. The father and son removed to this lot and settled on it in the fall of 1825 or spring of 1826.

The *primâ facie* claim of the plaintiffs below was a deed of February 24th 1827 for the north half of the lot, from Charles Day to Horace.

The defendants below then showed a judgment entered 29th of January 1827, against Charles Day and one Cowles, in favour of James Brawley for $3000, kept alive against the debtors with notice to Horace, terre-tenant, until 1843, when the land was sold by the sheriff to Brawley, from whom the defendants, through conveyances from several others, regularly deduced their title.

The plaintiffs then alleged a parol sale of the land in dispute by Charles Day to Horace about the time of their removal to the land in 1825–26.

The evidence as to the parol sale is comprised substantially in the following: That Horace Day had been working with his father in his blacksmith shop in New York, and about the time that he attained the age of twenty-one; was going to leave home; his father told him if he would stay with him a year he would give him the half of this lot. Horace and his father came to Erie and settled on the lot. Afterwards, when on the land working together, the father again said if Horace would stay he was to have half of the land. Horace had worked for him in New York, and was to have part of the land, the witness says "the north half." Next year Horace was married, and was living on the north half. There was "slashing" up to what was indicated as the line by the father. Horace chopped north of it; trees had been chopped to make the line; a farm also had been built on the line. Horace claimed the north part, and it was called Horace's part. One witness testified that he had "measured along the east side, dividing the tract into equal parts by an east and west line; Horace's old house would be on the south side." The time of these occurrences did not definitely appear. About 1842–3 the father lived in Horace's house, and planted some corn on the place. Horace lived 7 or 8 miles distant. Shortly after the sheriff's sale, the father and son said they had lost the place at the sale, and hurried to get their corn off. They then abandoned the land entirely.

Each party submitted points to the court.

Plaintiffs' points:—

1. If Horace Day bought the land and was in actual possession before the judgment of James Brawley *v.* Charles Day was entered, Horace Day was not a terre-tenant, and cannot be affected by the subsequent proceedings in this judgment.

2. In the *sci. fa.* No. 34, November Term, 1831, in which

[Willey *et al. v.* Day *et al.*]

Horace Day was summoned as terre-tenant, no judgment having been taken, and in the subsequent revivals, when the lien of original judgment was gone, he holds the land unaffected by the lien of the subsequent judgment of revival.

Defendants' points :—

1. The court is requested to charge the jury, That if the evidence of parol contract is believed, it is not of that clear and certain character, as to the nature, terms, and mutuality of the contract, or as to the exact boundary of the land said to have been embraced in it, as to take it out of the operation of the statute.

2. There is no sufficient evidence of exclusive possession, taken by Horace, under and in pursuance of the contract ; or the payment of any consideration, or the making of valuable improvements, to take the case out of the statute.

3. If Horace had not a sufficient title to vest the property in him as against defendants, before the entry of our judgment, then the plaintiffs cannot recover in this action.

The court (Johnson, P. J.), after stating the leading facts, charged : " The question upon which the case turns is this : Was the parol contract between Charles and Horace Day, for the sale and purchase of the land in controversy, valid and good to pass the title as against the lien of James Brawley's judgment ?. In determining this, we must regard the situation of things, and the position of the parties at the date of its entry, January 29th 1827. To constitute a valid parol contract for the sale of land, even as the law was understood and administered at the date of this one, it is necessary to prove by clear and distinct evidence, what the contract was, the location and limits of the land sold, the consideration paid or to be paid, and the time and manner of payment ; that possession was taken in pursuance thereof, and improvements made, more or less valuable, according to the circumstances and ability of the parties. We are asked by the defendants' counsel, to say to you, as the verdict of the law, that admitting all the facts as claimed by the plaintiffs, they do not make out such a parol contract, and such a possession under it as to make it good to pass the title, or sufficient to protect the land from the lien of Brawley's judgment against Charles Day, and that the plaintiffs cannot therefore recover.

" We think, though not without some hesitation as to our duty, that the facts should be submitted to you under proper instructions. Were this a contract of the present day or made since the adoption of more stringent rules with regard to parol contracts than prevailed at the period of its date, we might feel constrained to adopt the suggestion of the defendants' counsel. It was competent for the parties to make a valid parol contract even though absent from the land and in the state of New York, provided it

[Willey *et al.* v. Day *et al.*]

was followed up in its execution with reasonable diligence. To do so, the land contracted for must be clearly defined both as to location and quantity.

" Tract No. 1186, purchased by Charles Day, was a 200 acre donation lot located and surveyed. Was the north half of it, separated from the rest by an east and west line, a sufficient description clearly to designate the land as to quantity and location so that a surveyor could easily have run it out ?

" The contract must be otherwise clear of doubt as to the consideration and time of payment. It is not necessary the consideration should be a cash one or be specified in dollars and cents. If you believe the evidence of several witnesses uncontradicted, the consideration was to be one year's work in a blacksmith shop.

" Exclusive possession must be taken by the vendee in pursuance of the contract. Was that done ? The parties came to this county, as described by the evidence, in the fall of 1825. The land was entirely wild. They went on and commenced an improvement, lived together, made the first clearing and built the first cabin on the father's part, the south half. We are not told by any witness when the division line was made, but it was there early in the spring of 1826, shown and recognised by both parties ever afterwards. In the spring of 1826 the family of Charles Day moved out here and went upon the south part of this tract, claimed by Charles, and Horace commenced clearing on his part. Within a year or a year and a half after he came out he had some acres cleared, a house built and a wife in it. So far as the evidence shows, the old gentleman never occupied or claimed possession of it or did a day's work on it, or ever questioned Horace's right to it, down to the division line.

" Did Horace take and maintain exclusive possession of it in pursuance of his contract and within a reasonable time, and prosecute his improvement with reasonable rapidity, taking into consideration the circumstances of the parties and the country, and had all this occurred before the entry of Brawley's judgment ? He was bound to do all this in good faith and with reasonable promptness according to his ability. We submit to you whether he did so. If he did, and all the other requirements of the law were complied with, we see no reason why he should not have the benefit of a parol title to his land, even as against the creditor of his father.

" This position answers defendants' first and second points in the negative. The third is answered in the affirmative. The points of the plaintiffs are substantially answered in the general charge, the first in the affirmative and the second in the negative."

The jury found for the plaintiff.

The defendants having excepted to the charge, and the judge's answers to their points, removed the case to this court, and here

[Willey *et al. v.* Day *et al.*]

assigned for error the answer to the defendants' first and second points, and in charging :—" We think, though not without some hesitation as to our duty, that the facts should be submitted to you under proper instructions. Were this a contract of the present day, or made since the adoption of more stringent rules with regard to parol contracts than prevailed at the period of its date, we might feel constrained to adopt the suggestion of the defendants' counsel."

*H. L. Richmond* and *G. Church*, for plaintiffs in error, argued that the abandonment by Horace of the land, and neglect to assert his claim for eighteen years, should cause his claim to be looked on with distrust ; that the evidence of the contract, and the description of the land alleged to have been sold, were not sufficient to prevent the operation of the Statute of Frauds : citing McCue *v.* Johnson, 1 Casey 306 ; Bash *v.* Bash, 9 Barr 260 ; Poorman *v.* Kilgore, 2 Casey 365 ; Ranken *v.* Simpson, 7 Harris 474. That proof of final contract must be made before performance takes place : Eckert *v.* Eckert, 3 Penna. R. 332 ; the evidence in this case is in conflict with that principle. That there was no sufficient evidence of *exclusive* possession of Horace in pursuance of the contract, and the rule requires that the possession should be exclusive : Haslet *v.* Haslet, 6 Watts 464 ; notorious ; Brawdy *v.* Brawdy, 7 Barr 157 ; defined boundaries : Frye *v.* Shepler, Id. 91 ; to be accounted for only by the supposed agreement : Jones *v.* Peterman, 3 S. & R. 446. That here the vendee could be compensated in damages, which would bring it within the statute : Moore *v.* Small, 7 Harris 467 ; Postlewait *v.* Frease, 7 Casey 472 ; McKowen *v.* McDonald, 7 Wright 441.

*D. M. Farrelly* and *A. B. Richmond*, for defendants in error, contended that plaintiffs did not claim under a parol contract, but under the deed, and that the parol contract was given in evidence to show that the conveyance to Horace was not voluntary ; that if ever there was a lien against Horace's part it had expired before the sheriff's sale, and Horace's interest was never sold.

The opinion of the court was delivered, November 2d 1865, by
Strong, J.—This was an action of ejectment for the north half of lot No. 1186, in the Sixth Donation District. The record presents the singular spectacle of a recovery by plaintiffs upon a title they did not assert, and which they used only to rebut evidence of a right by which the defendants claimed to protect themselves in possession. The ejectment was brought in 1861 by Horace Day, the ancestor of the plaintiffs, and after his death they were substituted for him. The title which they gave in evidence in chief was a deed from Charles Day to Horace Day,

[Willcy *et al. v.* Day *et al.*]

his son, dated February 24th 1827, and recorded on the 8th of March next following. Having then proved the death of Horace Day, after the suit was brought and their own substitution on the record as his heirs, they rested their case. It was not until after the defendants had proved a judgment entered against Charles Day on the 29th of January 1827, kept alive until 1843 by writs of *scire facias* against the judgment-debtor, with notice to Horace Day, terre-tenant, and judgment on the writs and also a sheriff's sale under the judgment to James Brawley, whose title afterwards became vested in the defendants, that any evidence at all was given of a parol sale to Horace Day anterior to the deed made to him on the 24th of February 1827. Yet the case was put to the jury exclusively on the validity of a conveyance by parol, supported by what we regard altogether insufficient evidence. Neither the alleged contract of sale nor possession taken under it, followed by improvements made on the faith of it, was made to appear with any degree of distinctness. The evidence exhibits this state of facts: Horace Day attained his majority in 1825. Up to that time he and his father, Charles Day, resided in the state of New York. The father owned the entire lot No. 1186, and, with his son, removed to it either in the fall of the year 1825 or the year 1826. One witness testified that while they were resident in New York the father promised the son he would give him the half of the Sugar Creek lot if he (the son) would stay with him (the father) a year, to which Horace assented. Which half was not specified, nor does it appear whether the time during which the son agreed to remain with the father was to be before or after he came of age. That perhaps is immaterial. But the contract, if made at all, was in its terms executory. It did not purport to be the transfer of a present right. It contemplated a future assurance. Subsequently, and probably within a year, the parties removed to this state, and, according to the testimony of the next witness, the father showed him the line where they intended to have the division of the lot. The only other witness who testified upon the subject proved no more than an impression on his mind that "the old gentleman told Horace if he would work with him a certain time right along, he might have the land." He was to have the north part. This also was at best an executory contract. Certainly it was not an immediate transfer of the ownership. We have sought in vain for any proof of an executed contract of sale or gift, anterior to the deed of February 24th 1827. There is some evidence that a line was run between the north half and the south half of the lot before the fall of 1826. There was a slashing part of the way through, though not the entire distance, but it appears to have been a line of *intended* division, not of one consummated. There is nothing to show more than an executory contract until the deed was made. Then, so far as we can see,

[Willey *et al. v.* Day *et al.*]

the interest of the son in the land commenced.   That was, however, after the judgment of James Brawley against the grantor had been entered.   And even if there were adequate proof of a definite parol contract of sale, purporting to assure a present right, there is an entire want of evidence of any taking possession under or in pursuance of it.   We cannot overlook the fact already stated, that the father. make a deed to the son for the north half on the 24th of February 1827.   Whatever was done by Horace Day upon the lot conveyed to him after the deed was made, cannot be called action under the parol contract.   It is accounted for by the ownership acquired by the deed.   Now it is clear from the evidence that Horace did not reside. upon the north half before the deed was made.   He lived with his father.   And even afterwards, when he built a house for himself, he built it on the south half, thirty or forty rods from the dividing line.   The testimony is that he worked for his father.   One witness deposes that he chopped some on the north half in the winter of 1826–7, but whether before or after the deed was made does not appear. Another testifies that he was hired to the father in the summer of 1826, and that he and Horace worked some on the north half that summer.   They chopped together sometimes, but Horace then lived with his father, and if working on the lot at that time is evidence of possession it was then as much in the father as in the son, for the father's hired workman was thus engaged.   This is all the evidence in the case of any possession taken by Horace Day before the deed was made to him.   Under no ruling ever made by this court has such evidence been held sufficient to be submitted to a jury, to allow them to find from it a parol contract of sale executed.   It is in fact no evidence at all of possession taken in pursuance of a contract.   It is true we held in Richards *et al. v.* Elwell's Heirs, a case not reported, that after a long period of years, during which the vendee in an alleged parol contract of sale had been in possession, he was not to be held to the same rigid measure of proof as that which is required to sustain such a sale more recently made.   Lapse of time was allowed to supply want of directness and distinctness of proof, but not to create evidence.

The language of the late chief justice, in reference to that case, was as follows: " It seems to us there is evidence that there was such a sale, that the price was paid, possession delivered by the vendor, and the control of the land held by the vendee, and those claiming under him, for about twenty-eight years before suit brought.   Of some of these elements the direct evidence is quite insufficient, but when corroborated by a long control of the land that cannot otherwise be accounted for, it becomes quite convincing."   That case was a second time in this court, and our opinion was delivered by Agnew, J., reiterating and enforcing

[Willey *et al. v.* Day *et al.*]

what we first decided. We adhere to the rule thus laid down. But had the vendees in that case been out of possession during the long period that elapsed after the alleged parol contract, and before the ejectment was brought, time would have raised no presumption in their favour. It is long possession in pursuance of a contract that corroborates defective proof of its existence. The longer such possession, the more difficult is it to be accounted for on any other theory than that there was a contract executed. But in the case before us the presumptions are the other way. The possession of Horace Day, whatever it was, is accounted for by the deed to him. That gave him a right to possession until 1843, when the land was sold under a judgment superior to the deed. He then immediately left, declaring that he had lost the land. He did not even wait to be dispossessed by an execution, nor did he set up any right in virtue of a parol sale prior to the deed. He remained out of possession from 1843 until 1861, asserting no claim. Meanwhile the property had repeatedly been sold by the purchaser at sheriff's sale and his grantees, so far as it appears without any notice of an outstanding parol title. Under such circumstances it is not easy to see how lapse of time can avail him or his heirs to supply any deficiency of proof. We hold, therefore, that both the first and second points of the defendants below should have been affirmed, and that the jury should have been instructed that neither the proof of the contract nor that of possession taken under it was sufficient to justify a verdict for the plaintiff.

Judgment reversed, and a *venire de novo* awarded.

THOMPSON, J., dissented.